[Cite as *State v. Chandler*, 2013-Ohio-2903.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 98866

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## WILLIE D. CHANDLER

DEFENDANT-APPELLANT

### JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-559470

**BEFORE:** Keough, J., S. Gallagher, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 3, 2013

**ATTORNEY FOR APPELLANT**

Gayl M. Berger
30650 Pinetree Road, Suite 19
Cleveland, Ohio 44124

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Sherrie S. Royster
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Willie D. Chandler, appeals from the trial court's judgment, rendered after a jury trial, finding him guilty of carrying a concealed weapon and having a weapon while under a disability, and sentencing him to 21 months incarceration. Finding no merit to the appeal, we affirm.

## I. Background

{¶2} The Cuyahoga County Grand Jury indicted Chandler on one count of carrying a concealed weapon in violation of R.C. 2923.12(A)(2) (Count 1) and one count of having a weapon under a disability in violation of R.C. 2923.13(A)(2) (Count 2). Chandler pleaded not guilty and the matter proceeded to trial. Count 1 was tried to a jury; Count 2 was tried to the bench.

{¶3} The evidence at trial demonstrated that at approximately 2:00 a.m. on February 8, 2012, Beachwood police responded to the area of Chagrin Boulevard after a report of a speeding car and the sound of a crash. Sergeant John Atterbury was the first to arrive on the scene; patrol officer Amy Dansizen arrived seconds later.

{¶4} Officer Dansizen testified that when she arrived on the scene, she observed that a Ford Taurus and an Audi had been involved in an accident. She saw Chandler standing outside the Taurus by the front passenger side door. He appeared to be highly intoxicated, was having trouble standing, and was slurring his words as he spoke to her. She also noticed that there was blood and an apparent injury on Chandler's right hand.

Chandler told Dansizen that he had been a passenger in the Ford but did not know where the driver, his friend Torriano Brown, was. As Dansizen was talking to Chandler, she saw a naked man crossing the street a short distance away from the accident scene. She told Atterbury, who then began pursuing the male.

{¶5} Atterbury testified that he followed a path of clothes leading away from the accident site to Brown, who was naked except for his socks. Atterbury said that Brown was acting erratically and his speech was incoherent — behavior consistent with someone on PCP. Atterbury took Brown into custody and summoned an ambulance for him. When Dansizen spoke with Brown at the hospital a short time later, he told her that he had smoked wet (a marijuana cigarette dipped in PCP).

{¶6} Atterbury returned to the crash scene and after Chandler was transported to the hospital, conducted an inventory search of the Ford Taurus, during which he found a loaded .357 magnum handgun underneath the front passenger seat. Atterbury testified that the gun was not immediately visible when he looked in the car and that he only discovered the gun when he put his head down and looked under the seat. Atterbury saw a dried substance that he believed to be blood on the front right side of the gun cylinder.

{¶7} Lieutenant Keith Winebrenner, a state certified firearms instructor, testified that he test-fired the gun and found it to be operable. Winebrenner testified further that if skin got caught in the gap between the cylinder on the gun and the firearm frame, the skin would be injured as the cylinder rotated when the gun was shot. He also testified,

however, that the gap was big enough only for a child's finger and that in 18 years as a firearms instructor, he had never heard of anyone's skin getting caught in the gap.

{¶8} Detective Allan Baumgartner testified that he interviewed Chandler at the Beachwood jail approximately eight hours after the accident. Chandler told Baumgartner that he and Brown had been at several bars earlier in the evening, but did not answer when Baumgartner asked him what bars they had been to. Baumgartner then asked Chandler why Brown had been walking around outside naked at two o'clock in the morning but Chandler did not answer the question. Baumgartner testified that he then told Chandler that the police had found a gun with blood on it under the front passenger seat of Brown's car, where Chandler had been sitting. He said he reminded Chandler of the cut on his hand and asked him if there was anything he could tell him about the gun, but Chandler told him he did not know anything about the gun.

{¶9} Investigator John Finucan testified that he took four swabs from the gun to test for DNA; two from the cylinder, one from the gun grip, and one from the trigger. In May 2012, after he had been released from jail on bond, Chandler voluntarily appeared at the police station and gave a cheek swab DNA sample. Baumgartner then submitted the swabs from the gun to the Bureau of Criminal Investigation ("BCI") for comparison with Chandler's DNA. Baumgartner admitted that he did not ask BCI to compare the gun swabs with anyone else's DNA.

{¶10} David Niemeyer, a BCI forensic scientist, testified that he compared the swabs and determined that Chandler's cheek swab was consistent with a swab from the

gun cylinder.  Niemeyer admitted that BCI only tested one swab from the dried blood on the cylinder of gun and did not test the swabs from the gun's grip or trigger for "touch DNA."

{¶11} Chandler testified in his own defense.  He admitted to prior convictions for aggravated burglary, aggravated robbery, and drug trafficking.  He said that prior to the car accident, he and Brown had been drinking at several bars but he could not remember what bars they had been to.  According to Chandler, after Brown smoked a PCP stick, they went riding around.  Chandler said that as they were riding on the highway, Brown suddenly pulled out a gun and holding it with one hand, pointed it at Chandler, and said, "I think you were messing with my girl."  Chandler said that he grabbed the gun and pulled it down on the passenger side of the car and, as he and Brown struggled over the gun, it went off, injuring Chandler's hand.  Chandler said there was a bright light and Brown lost control of the car.

{¶12} Chandler testified that after the bright light occurred, he must have "been unconscious" because he only remembered the incident with the gun after he had been in jail for a few days.  Chandler said that when Baumgartner interviewed him eight hours after the accident, he remembered going to several bars before the accident and to the hospital after the accident, but did not remember anything about the gun.  Chandler admitted, however, that when "it all came back to [him]" on his second day in jail, he did not tell Baumgartner or any other law enforcement personnel about what had happened

with the gun. Chandler said he did not know how the gun got under the front passenger seat but speculated that it may have slipped under the seat when the Audi hit the Taurus.

{¶13} After the trial court denied Chandler's renewed Crim.R. 29 motion for acquittal, the jury found him guilty of carrying a concealed weapon and the trial court found him guilty of having a weapon under disability. The court sentenced him to an aggregate term of 21 months incarceration.

## II. Analysis

{¶14} In his first and second assignments of error, Chandler contends that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶15} Crim.R. 29(A) provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶16} A manifest weight challenge, on the other hand, questions whether the prosecution met its burden of persuasion. *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). The manifest-weight-of-the-evidence standard of review requires

us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the convictions. *Id.* A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *Id.* at 388.

{¶17} Under R.C. 2923.12(A)(2), regarding carrying a concealed weapon, "no person shall knowingly carry or have, concealed on the person's person, or concealed ready at hand, a handgun * * *." Under R.C. 2923.13(A)(2), regarding having a weapon while under disability, "no person shall knowingly acquire, have, carry, or use any firearm * * * if * * *the person * * * has been convicted  of any felony offense of violence * * *." "A person acts knowingly when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶18} Chandler argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence because the police did not adequately investigate who the gun belonged to. Specifically, he contends that the police should have asked that the swabs from the gun's trigger and grip be tested to determine whether that DNA was consistent with Brown's. He contends that the blood found on

the gun cylinder was consistent with his version of events and the jury was denied all of the facts because the police did not properly investigate the matter.

{¶19} But the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The jury heard Chandler's version of the alleged incident in the car, as well as his assertion that the gun belonged to Brown. It also heard testimony regarding what the police did to investigate the matter, and testimony that BCI only tested the dried blood swab from the gun cylinder. Thus, the jury was aware of any alleged deficiencies in the investigation and still found Chandler's story not credible.

{¶20} We cannot conclude that the jury's determination was against the manifest weight of the evidence. Chandler's DNA was on the gun and the gun was found well underneath the front passenger seat, where Chandler admitted he had been sitting. Furthermore, even assuming that Chandler did not remember anything about the gun when Baumgartner interviewed him eight hours after the accident, he admitted that he did not tell any law enforcement personnel about the gun incident when his memory allegedly came back. And Lt. Winebrenner testified that in 18 years as a firearms instructor, he had never heard of anyone getting injured when their skin got caught in the gap on a revolver between the cylinder of the firearm frame. In light of this evidence, the jury did not lose its way or create a manifest miscarriage of justice in finding Chandler guilty of carrying a concealed weapon. Likewise, because Chandler admitted to a prior conviction

for aggravated robbery involving the use of a gun, Chandler's conviction for having a weapon while under disability was not against the manifest weight of the evidence.

**{¶21}** The first and second assignments of error are therefore overruled.

**{¶22}** In his third assignment of error, Chandler contends that he was denied his constitutional right to effective assistance of counsel. To establish ineffective assistance of counsel, a defendant must show that counsel's representation was deficient in that it "fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Sanders*, 94 Ohio St.3d 150, 151, 2002-Ohio-350, 761 N.E.2d 18, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 694.

**{¶23}** In evaluating a claim of ineffective assistance of counsel, a court must give great deference to counsel's performance. *Strickland* at 689. A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decision in the exercise of reasonable professional judgment. *Bradley* at 141.

**{¶24}** Chandler contends that counsel was ineffective because he did not request that the gun be tested for touch DNA and did not have Chandler give a statement to the police when he appeared at the Beachwood police station to give his DNA sample. Under our deferential standard of review, we cannot conclude that counsel's actions were

ineffective assistance of counsel. The jury heard Chandler's testimony that the gun belonged to Brown and his explanation of the events in the car. His assertion on appeal that a statement to police would have bolstered his trial testimony is merely speculation. It is also speculation that testing more swabs from the gun would have changed the result of the trial. Accordingly, the third assignment of error is overruled.

{¶25} Affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

SEAN C. GALLAGHER, P.J., and
EILEEN T. GALLAGHER, J., CONCUR