# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 100215**

---

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## ROBERT E. HUNTER

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2013-CRB-003053

**BEFORE:** Keough, J., Boyle, A.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** April 3, 2014

[Cite as *Cleveland v. Hunter*, 2014-Ohio-1432.]

**ATTORNEY FOR APPELLANT**

Patrick S. Lavelle
Van Sweringen Arcade
123 West Prospect Avenue, Suite 250
Cleveland, Ohio 44115

**ATTORNEYS FOR APPELLEE**

Barbara Langhenry
Director of Law
Victor R. Perez
Chief Prosecutor
Angela Rodriguez
Assistant City Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

**{¶1}** Defendant-appellant, Robert E. Hunter, appeals from his conviction for cruelty to animals. Finding no merit to the appeal, we affirm.

## I. Background

**{¶2}** Hunter was charged with one count of animal neglect in violation of Cleveland Codified Ordinances ("Cleveland Cod. Ord.") 603.091 and one count of cruelty to animals in violation of Cleveland Cod. Ord. 603.09(a)(1), both misdemeanors of the first degree. After a bench trial, the court found him not guilty of animal neglect but guilty of cruelty to animals. The court sentenced him to 180 days in jail, suspended, placed him on two years of inactive probation, and ordered that he forfeit three dogs to the city of Cleveland. This appeal followed.

## II. Analysis

**{¶3}** In his single assignment of error, Hunter contends that his conviction was against the manifest weight of the evidence. When reviewing a claim that a conviction is against the manifest weight of the evidence, we review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *State v. Chandler,* 8th Dist. Cuyahoga No. 98866, 2013-Ohio-2903, ¶16, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. We then determine if the trier of fact clearly lost its way in resolving conflicts in the evidence and created such

a miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* We exercise this discretionary power only in those exceptional cases where the evidence weighs heavily against conviction. *Id.*

{¶4} The state presented the testimony of Cleveland police detective Sean Smith at trial. Smith testified that in late October or early November, 2012, he began an investigation regarding a house located at 15908 Huntmere in Cleveland in response to a complaint from the city's dog warden regarding dog- fighting at the home. Smith learned that the owner of the property was John James. Smith said he looked over the fence into the backyard of the house approximately 12 times over several weeks and saw several dogs tethered on very short chains in the backyard, but did not ever see any food or water in the yard. He also spoke with several neighbors who confirmed there was dogfighting in the backyard.

{¶5} On November 26, 2012, Smith and several other officers executed a search warrant at James's home. Smith said he found three dogs in the backyard — a large brown female pit bull, a small brown dog, and a male black and white pit bull mix — and two puppies in a shed in the backyard. Smith said that Hunter contacted him several days after the search and told him that the large brown pit bull, the black and white pit bull mix, and another dog found in the basement of the home belonged to him.

{¶6} Smith testified that the dogs in the backyard were tethered to homemade dog houses with thick, eight to ten foot chains that weighed approximately 50 to 60 pounds each. Smith said that he observed two water bowls in the backyard, one that was turned over and another that was dry and full of leaves. He said there was no food or water in the backyard, and that even if there had been water in the bowls, because of its short chain, the black and white dog could not have reached them. He testified further that the bowl closest to the brown pit bull was empty and dry.

{¶7} Smith found two dogs in the basement of the home, one of which belonged to Hunter. Hunter's dog was chained to a pole in the basement with a chain similar to those on the dogs in the backyard and it had many cuts and scars on its face. Smith said there was water available for this dog but he found no dog food anywhere in the house.

{¶8} Hunter admitted that he owned the dogs found at James's house. He said that he and the dogs were evicted from his brother's house, so he moved in with his mother, who lived down the street from James. Hunter said that James agreed to keep the dogs until he found another home. He said that he fed and watered the dogs daily, although he admitted that his feeding and watering schedule was not consistent. Hunter testified that he fed the dogs raw chicken and that water was always available from a five-gallon bucket next to the doghouse. He said that he brought James bags

of dog food and assumed that James was feeding the dogs in the basement because he did not have access to the house. Hunter testified that on November 26, 2012, the day the search warrant was executed, he went to feed the dogs but they were gone. He said that he called Smith that day about the dogs.

{¶9} On cross-examination, Hunter testified that he went to James's house a little before noon on November 26 to feed the dogs. On rebuttal, however, Det. Smith testified that he watched James's house from approximately 7:30 to 9:30 a.m. on the morning of November 26 while he waited for James to leave the house. Smith testified that the police executed the search warrant at approximately 10:00 a.m. and did not leave the property until approximately 1 p.m.

{¶10} The trial court found Hunter guilty of cruelty to animals in violation of Cleveland Cod. Ord. 603.09(a)(1), which states:

> No person shall torture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water.

{¶11} Hunter argues that his conviction was against the manifest weight of the evidence because by finding him guilty, the trial court necessarily interpreted this provision to impose strict liability, i.e., to mean

that a dog owner may never leave its dogs without food and water, even if only for a short period of time. Hunter concedes that his dogs did not have food and water for a period of several hours on November 26, 2012. He contends, however, that Cleveland Cod. Ord. 603.09(a)(1) does not require constant access to food but only a sufficient quantity of food and water, which he asserts means an amount provided in such frequency as to maintain the good health of the animal. He contends there was no evidence his dogs were malnourished, which must mean they were getting a sufficient quantity of food and water to sustain them, and, accordingly, he did not violate the statute.

**{¶12}** Hunter is correct that Cleveland Cod. Ord. 603.09(a)(1) does not create a strict liability offense. *State v. Ham*, 3d Dist. Wyandot No. 16-09-01, 2009-Ohio-3822, ¶ 39, citing *State v. Bergen*, 121 Ohio App.3d 459, 461, 700 N.E.2d 345 (1st Dist.1997) (interpreting a similar statute). The requisite mens rea is recklessness. *Id.* A person acts recklessly when, with heedless indifference to the consequences, he disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. Cleveland Cod. Ord. 601.07(c).

**{¶13}** Even under this standard, Hunter's conviction for cruelty to animals is not against the manifest weight of the evidence. The city

presented credible evidence to establish that the dogs were consistently confined without food and water. Det. Smith testified that he had observed the dogs in the backyard of James's home nearly a dozen times over several weeks and had never seen food or water available to them. And Smith did not see anyone feed or water the dogs in the backyard on November 26, 2012, the day the police executed the search warrant, even though Smith observed the house for two hours before executing the warrant and was actually on the property for over three hours.

{¶14} Furthermore, there were significant inconsistencies in Hunter's testimony. Although Hunter insisted that the dogs in the backyard always had access to water from a five-gallon bucket by the doghouses, Smith testified that over the course of several weeks, he never saw any water provided for the dogs in the backyard. And no buckets were found in the backyard on November 26, 2012, when the police executed the search warrant.

{¶15} Moreover, on cross-examination, Hunter testified that when he came to feed the dogs at approximately 11:45 a.m. on November 26, the dogs were gone. But Det. Smith never saw Hunter that day, even though the police were at James's home until 1 p.m. Hunter also testified that he immediately called Smith on November 26 when he discovered that the dogs

were missing. Smith, however, testified that Hunter did not call him until several days later, which indicates that despite Hunter's testimony that he fed and watered the dogs every day, he was not aware for several days that his dogs were missing and was unconcerned about feeding or watering them.

{¶16} After reviewing the record, weighing the evidence and reasonable inferences, and considering the credibility of the witnesses, we cannot say that Hunter's conviction was against the weight of the evidence. Even if Hunter fed and watered the dogs once every day, as the trial court found at sentencing, the dogs in the backyard were always staked to the ground and there was nothing within their reach that allowed them to ever get water during the day or evening. Such disregard for his dogs' thirst can only be characterized as reckless. Moreover, at a minimum, Hunter acted recklessly regarding the dog found in the basement by failing to ensure that the dog was being properly fed by James. Hunter testified that he did not feed or water the dog in the basement because he did not have access to James's house and simply "assumed" that James was feeding the dog.

{¶17} Because Hunter's dogs were confined without a sufficient quantity of both food and water, his conviction for cruelty to animals in violation of Cleveland Cod. Ord. 603.09(a)(1) was not against the manifest weight of the evidence. The assignment of error is overruled.

**{¶18}**   Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, A.J., and
PATRICIA ANN BLACKMON, J., CONCUR

[Cite as *Cleveland v. Hunter*, 2014-Ohio-1432.]